## Case No. 15,985.

UNITED STATES v. PACKAGE OF LACE.

[Gilp. 338.] [1]

District Court, E. D. Pennsylvania. Feb. Term, 1833.

CUSTOMS LAWS — FORFEITURES — FRAUDULENT INVOICES—OMISSIONS FROM INVOICE.

1. To justify the forfeiture of a package of goods, under the provisions of the fourth sec-

[1] [Reported by Henry D. Gilpin, Esq.]

tion of the act of 28th May, 1830 [4 Stat. 409], either the package must contain an article not described in the invoice, or the package or invoice must be made up with intent to evade or defraud the revenue.

2. On an information for forfeiture of a package of goods, containing an article not described in the invoice, under the provisions of the act of 28th May, 1830, neither accident, mistake, nor innocence of fraudulent intention is a sufficient ground of defence.

3. The proviso in the sixty-seventh section of the act of 2d March, 1799 [1 Stat. 677], which declares "that a package differing in its contents from the entry shall not be forfeited, if it shall be made to appear to the satisfaction of the collector or of the court of the district that such difference proceeded from accident or mistake," is repealed by the act of 20th April, 1818 [3 Stat. 433], and the forfeiture can only be remitted in the manner prescribed by the act of 3d March 1797 [1 Stat. 506].

On the 5th September, 1831, the attorney of the United States, for the Eastern district of Pennsylvania, filed an information against a package of cotton lace, imported into the port of Philadelphia, on the 24th July, 1831, from Liverpool, in England, on board of the ship Monongahela. The information alleged that the said goods were subject to ad valorem duty, and that the package, being inspected, was found to contain certain goods, wares, and merchandise, not described in the invoice, whereby the same was forfeited; and due process of law for the condemnation of the goods in question was prayed for. On the 1st July, 1831, Eliza Bacon filed a claim to the said package, for and on behalf of Charles Mellor. In answer to the information, the claimant denied that the package was made up with any intent to evade and defraud the revenue, or that the same was liable to forfeiture.

On the 19th February, 1833, the case came on for trial before Judge Hopkinson, and a special jury. It appeared by the evidence, that, on the 10th August, 1831, the goods were entered at the custom house by the claimant, who produced the original invoice at the time of making the entry. On the same day, and immediately after the entry, the package in question was brought to the custom house, in order to be inspected, under the provisions of the fourth section of the act of 28th May, 1830. On opening the package, at the public warehouse, thirteen pieces of quillings were found lying on the top, which were not mentioned or described in the invoice. Testimony, taken under a commission to Nottingham, in England, where the lace was manufactured, went to show, that the thirteen pieces of quillings had been placed in the package by accident and mistake, and that the omission to describe them in the invoice arose from ignorance, on the part of the person by whom it was made, that they were contained in the package.

Mr. Gilpin, for the United States.

This information is founded on the fourth section of the act of 28th May, 1830, relative to goods subject to ad valorem duty, which

declares, "that if any package shall be found to contain any article not described in the invoice, the same shall be forfeited." The provisions of this law are too plain to be controverted. Its object is to secure, even more strictly than before, the correctness of the invoice. It requires that document to be correct, under the heaviest penalty. By the act of 2d March, 1799, a discretion was confided to the collector of the customs, to judge whether or not a difference between the contents of the package, and the account of them given at the time of entry, was the result of accident or design; but that discretion no longer exists. Repeated evasions of the revenue have given rise to this change. If the error is not fraudulent, the secretary of the treasury is authorised to remit the forfeiture, by the act of 3d March, 1797; 1 Story's Laws, 458, 632; 3 Story's Laws, 1684 [1 Stat. 506, 677; 3 Stat. 433].

Mr. Broom, for claimant.

It is a mistake to suppose that the law does not look to the fraudulent intention. Without that there can be no forfeiture. None has been proved in this case, none even is alleged in the information or on the argument. The whole series of the revenue laws shows that the forfeiture depends on the fraudulent design. The only change has been in the tribunal which is to judge of this design; formerly it was the collector of the customs, now it is the court and jury. The act of 2d March, 1799, expressly exempts a package from forfeiture, though containing an article not described in the invoice, if the collector is satisfied there was no intention to defraud the revenue. The act of 20th April, 1818, repeals certain parts of that law, but does not touch this proviso. It could not be intended to apply the remedy prescribed in the act of 3d March, 1797, to these cases, for it was passed previously to the law of 2d March, 1799, which legislates upon these matters, and to which alone, and not to that of 3d March, 1797, the provisions of the act of 20th April, 1818, are supplementary. This is the more evident, because this latter law directs that "forfeitures are to be recovered and distributed in the manner prescribed by the act of 2d March, 1799," and surely it does not mean that the forfeitures are to be recovered and distributed under one law, and remitted or mitigated under another.

Mr. Gilpin, for the United States, in reply.

Nothing can be more explicit than the fourth section of the act of 28th May, 1830; if it conflicts with any previous law, it repeals it. Where a subsequent statute is inconsistent with a former one, and the two cannot be reconciled; or where the latter is on the same subject matter and introduces some new qualifications or modifications, the two cannot stand together; the latest must prevail. Affirmations in statutes that introduce new provisions, imply a negative of all that is not

within their purview; so that a law directing a thing to be done in a certain manner, implies that it shall not be done in any other manner. U. S. v. Hair Pencils [Case No. 15,924.]

But in fact there is no conflict between the act of 28th May, 1830, and that of 2d March, 1799. The designation of the offence is the same in both; the penalty is the same; the mode of recovery is the same. The difference is in the time and manner of redress, mitigation or pardon after the offence has been proceeded against and ascertained. To establish, therefore, the discordance now suggested, and to show that the subsequent and late law is to be controlled by that passed twenty-five years since, would not, even if it could be done, afford a valid ground of defence.

HOPKINSON, District Judge (charging jury). The information you are trying is founded on the fourth section of an act of congress passed on the 28th May, 1830. This section, after directing the manner in which the collectors of the customs shall cause the packages of imported goods to be opened and examined, goes on to enact that "if any package shall be found to contain any article not described in the invoice, or if such package or invoice be made up with intent, by a false valuation, or extension, or otherwise, to evade and defraud the revenue, the same shall be forfeited."

Two distinct acts are made the grounds or causes of forfeiture. 1. If a package contains any article not described in the invoice. 2. If the package or invoice has been made up with intent to evade or defraud the revenue. The information before you proceeds on the first, and charges that the package or box in question did contain certain articles not described in the invoice. This is the fact alleged in the information, and it is denied by the answer, and is thus put before you for your decision upon it. It is a question of fact merely, apart from every consideration of intention, innocent or fraudulent. Did this package contain any article not described in the invoice, or did it not? Your verdict is to answer this question. The inquiry on the second ground of forfeiture is more difficult and complicated, for in that case the jury have to decide, not only upon the truth of the fact charged, but also the intention with which the act was done, whether in innocence, by mistake, or by accident, or with a design to defraud the revenue. In this case there is no dispute about the fact; it is not, and it could not be denied, that the box of laces did contain articles not described in the invoice. The whole defence is put on the law of the case, which relieves you from the trouble and responsibility of deciding it. It is a question which belongs to the court, and I shall take it upon myself on my own responsibility.

The defence is, that, although the fourth section of the act of 28th May, 1830, declares

that a forfeiture shall be incurred, if the package contain any article not described in the invoice, yet that no such forfeiture is incurred unless the articles so found in the package were put there with a fraudulent intent; that if it happened by accident or mistake, it may be inquired into on this trial; that this is to be decided by you; and that the claimant will be entitled to your verdict if you shall be of that opinion. Is this the true meaning and construction of the law? In such a question we must first look to the law itself. Is that clear and explicit? Has it no ambiguity, which requires that we should look further for an explanation? I can see no such ambiguity in the enactment in question. It is a direct, explicit declaration, that if any article shall be found in a package which was not inserted or described in the invoice of that package, the same, that is, the package, shall be forfeited; not a word or intimation about the intention with which the surplus articles were put into the package; not a suggestion that accident or mistake is to be a defence on the trial of a prosecution for this penalty, or is to be any part of the issue or inquiry on such trial.

The argument of the counsel for the claimant has taken another course to bring him to his conclusion. His main reliance has been on the sixty-seventh section of the act of 2d March, 1799, which he considers now to be in force, and to be incorporated with the provisions of the law of 1830. The section of the former act referred to, is in many respects different in its course of proceeding from the latter act; changes having been made from time to time as experience pointed them out. The sixty-seventh section of the act of 1799, made it lawful for the collector, after entry of any goods, on suspicion of fraud, to open and examine any package; and "if the package so examined shall be found to differ in its contents from the entry, then the goods contained in such package shall be forfeited." Here we see, that the examination is to be made after the entry; that it is to be made only on a suspicion of fraud; and the difference which works the forfeiture, is to be between the entry and the contents of the package. Nothing is said about the invoice. By the act of 1830, the collector is directed absolutely, and whether he has or has not a suspicion of fraud, to cause one package out of every twenty of each invoice, to be opened and examined; and if the package thus examined shall be found not to correspond with the invoice, then all the goods contained in the entry are to be inspected; and then it is declared, that if any package shall be found to contain an article not described in the invoice, it shall be forfeited. By the law of 1799, the collector is authorised to open and examine packages only on a suspicion of fraud: this is the groundwork of his proceeding: and the subsequent proviso of the law is consistent with the principle of the enactment; it is, that

the forfeiture shall not be incurred if it shall be made to appear to the satisfaction of the collector, or of the court in which a prosecution shall be had for the forfeiture, that such difference proceeded from accident or mistake, and not from an intention to defraud the revenue. The opening and examination of the package is to be made only when, in the judgment and discretion of the collector, there is good reason to suspect fraud; and it is consistent with this principle, that if he shall afterwards be satisfied that his suspicions were unfounded, and there was no intention to defraud the revenue, he should have the authority to declare this opinion, upon which the forfeiture should not be incurred.

Now the argument for the present claimant is, that the proviso of the sixty-seventh section of the act of 1799 is still in force, although it is clear that the enacting clause has been suspended by subsequent laws; and that, therefore, if on a seizure under the law of 1830, the collector should be satisfied there was no intention of fraud when goods, not described in the invoice, are found in a package, the forfeiture would not be incurred; that the court has the same power; and that the jury stands in the place of the court in the exercise of this power, since it has been decided that seizures on land are to be tried by a jury. This process of reasoning, which is not a little complicated, would bring the question of intention before you in the determination of this cause. It is alleged that this proviso has never been repealed, and this is the foundation of the argument. The act of 1799 continued to be the law of the land until 1818, when a supplement to it was passed, introducing material changes in the whole revenue system. By the twenty-second section of the supplement, a change is made in the law on the subject of our present inquiry. The collectors are directed, without any previous suspicion of fraud, to cause at least one package out of every invoice to be opened and examined. We stop here to ask, if this positive order does not take from the collector the discretion to examine a package or not, according as he should or should not entertain a suspicion of fraud; and could he justify himself for neglecting to do it by the allegation that he had no such suspicion? Yet there is no express repeal of that part of the sixty-seventh section of the act of 1799, any more than of the proviso of that section.

We proceed with the act of 1818. After directing that the package shall be examined, it enacts, that if it shall be found not to correspond with the invoice, then a full inspection shall be made of all the goods included in the entry; "and if any package is found to contain any article not described in the invoice, the whole package shall be forfeited." It is further directed, that "if the goods shall be subject to an ad valorem duty, the same proceedings shall be had, and the same pen-

alties shall be incurred as are provided in the eleventh section of the act: provided, that nothing therein contained shall save from forfeiture any package having in it any article not described in the invoice." We are here referred to the eleventh section of the act, and by that it is enacted that when, in the opinion of the collector, there is just ground to suspect that goods, subject to an ad valorem duty, have been invoiced below their true value, he shall direct them to be appraised; and if the appraised value shall exceed the invoice price, an addition is to be made to it, on which the duties are to be estimated. To prevent any misunderstanding, to preserve the distinction between goods found in the package not mentioned in the invoice, and an undervaluation of them in the invoice, it is expressly provided that nothing in the act shall save from forfeiture any package having in it goods not described in the invoice.

The whole clause or provision in the act of 1799, which relieves the forfeiture, if the collector or the court shall be of opinion that no fraud was intended, is omitted. Do we find no substitute for it; no power to discriminate between fraudulent and innocent cases of excess? There is a substitute. The power to discriminate between such cases remains, although it is vested in another tribunal. The twenty-fifth section enacts, that all penalties and forfeitures incurred by force of this act may be mitigated or remitted, in the manner prescribed by the act entitled, "An act for mitigating or remitting the forfeitures, penalties, and disabilities accruing in certain cases therein mentioned," passed on the third day of March, 1797. That act directs the party who has incurred the penalty or forfeiture, to present his petition to the judge of the district, who is to inquire into the circumstances of the case; to state the facts and transmit them to the secretary of the treasury, who shall have power to mitigate or remit the forfeiture, if, in his opinion the same shall have been incurred without wilful negligence, or any intention of fraud. It is to be observed that there never was a power, in the collector or the court, to remit a forfeiture. The provision of the law of 1799, was that no forfeiture should be incurred in the case mentioned, if the collector should be of opinion that the difference, between the entry and the contents of the package, proceeded from accident or mistake, and not from an intention to defraud the revenue. The law of 1818, also enacts a forfeiture for such a difference, but does not re-enact the condition on which the forfeiture shall not be incurred. The forfeiture is declared to be absolute and complete, on finding any article in the package not described in the invoice, and the circumstance of accident or mistake which, in the former law, was referred to the judgment of the collector, and would relieve from the forfeiture, is, by the act of 1818, to be the ground of a petition for a remission, to be

judged of by the secretary of the treasury. How can we suppose that it was the intention of congress, that there should be no forfeiture in cases of accident or mistake, and, at the same time, to refer such cases to the treasury for a remission of the forfeiture at the discretion of the secretary? Yet such must be the state of the law, if the proviso of the sixty-seventh section of the act of 1799 is considered to be in force. The 'whole of that section is supplied by the act of 1818, and repealed so far as it is inconsistent with it.

Some stress was laid on that part of the twenty-fifth section of the act of 1818, which declares, that all the penalties and forfeitures incurred by force of it, "shall be sued for, recovered, distributed, and accounted for, in the manner prescribed," by the act of 2d March, 1799. It has been argued that this has reference to and keeps alive the sixty-seventh section of that act. I see no reason for this construction. The section of the law of 1799 referred to. is evidently the eighty-ninth, which provides expressly for the recovery and distribution of the penalties incurred by any breach of it.

The next act on the subject is that of 1st March, 1823. another supplement to the law of 1799. The fifteenth section of this act, among other things, enacts, that "if any package be found to contain any article not described in the invoice, the whole package shall be forfeited;" there is then this proviso; "that the secretary of the treasury be, and he is hereby, authorised to remit the forfeiture, if in his opinion, the said article was put in by mistake, or without any intention to defraud the revenue." Here then is the whole case provided for; what shall constitute the offence; what the penalty or punishment shall be; and in what manner and by what authority, a discrimination shall be made between cases of fraud and cases of mistake. It is hardly possible to believe that the same power was left in the collector under the law of 1799. The recovery and distribution of penalties and forfeitures are to be made according to the act of 2d March, 1799. and to be mitigated or remitted in the manner prescribed by the act of 3d March, 1797, already referred to.

We now come to the law of 1830, under which this prosecution has been instituted. It is entitled, "An act for the more effectual collection of the impost duties." I have already remarked upon the language of the section, which embraces the charge laid in this information. There is nothing doubtful or ambiguous in it, and I have found nothing in any antecedent law to affect the construction of this act, in the manner or to the purpose contended for by the claimant. The seventh section of this act also refers it to the secretary of the treasury to remit any forfeiture, whenever he is of opinion that no fraud on the revenue was intended.

On the whole case, then. the fact being adjudged of by the secretary of the treasury. mitted or proved to your satisfaction, that the box or package of laces in question, did contain articles not described in the invoice, I have no doubt on the law, that the whole package is forfeited, and that neither you nor I have any thing to do with the question, whether these articles got into the box by mistake or accident, nor with the intention, fraudulent or innocent, in putting them in. The law has given the decision of that question to another power in the government. It belongs not to you or to me.

The jury found a verdict for the United States.